RANDY S. GROSSMAN
Acting United States Attorney
DAVID CHU (CA Bar No. 242046)
VALERIE H. CHU (CA Bar No. 241709)
MARK W. PLETCHER (CO Bar No. 034615)
MICHELLE L. WASSERMAN (CA Bar No. 254686)
Assistant U.S. Attorneys
880 Front Street, Room 6293
San Diego, California 92101
Telephone: (619) 546-9714

Attorneys for the United States

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>DAVID NEWLAND, ET AL.,<br><br>Defendants. | No. 17-CR-00623-JLS<br>Date:    September 2, 2021<br>Time:    9:00 a.m.<br><br>**UNITED STATES'S RESPONSE IN OPPOSITION TO DEFENDANTS' MOTIONS IN LIMINE** |

The United States responds to the Defendants' motions in limine, specifically:

| | **Motion** | **Filing** | **Page** |
|---|---|---|---|
| 1. | Produce *Brady* and *Giglio* Material | Doc. 525 (Newland) | 3 |
| 2. | Allow Reliance on Dolan's Trial Subpoenas | Doc. 526 (Newland) | 5 |
| 3. | Exclude Reading of Indictment | Doc. 530 (Loveless) Doc. 534 (Lausman) | 6 |
| 4. | Dismiss Count 12 or Give Venue Instruction | Doc. 531 (Lausman) | 7 |
| 5. | Exclude Nov. 5, 2013 Recording | Doc. 532 (Loveless) | 9 |
| 6. | Limit Evidence of Conspiracy | Doc. 534 (Lausman) Doc. 540 (Dolan) | 12 |
| 7. | Exclude Co-Conspirator Statement Until Proof of Conspiracy | Doc. 534 (Lausman) | 14 |
| 8. | Preclude 404(b) Evidence for Lack of Notice | Doc. 534 (Lausman) Doc. 535 (Herrera) | 15 |
| 9. | Preclude Evidence of Asking for Counsel | Doc. 534 (Lausman) | 15 |
| 10. | Preclude Theory that Acceptance of Gift Alone Violated Official Duty | Doc. 534 (Lausman) | 15 |
| 11. | Preclude Evidence re Carol Lausman | Doc. 534 (Lausman) | 16 |
| 12. | Request for Opening Demonstrative | Doc. 534 (Lausman) | 19 |
| 13. | Exclude Emails as Inauthentic and Double Hearsay | Doc. 535 (Herrera) | 19 |
| 14. | Exclude Expert Witness for Lack of Notice | Doc. 535 (Herrera) | 20 |
| 15. | Disclose Jencks Material Two Months Before Trial | Doc. 535 (Herrera) | 20 |
| 16. | Give Each Juror Copy of Jury Instructions | Doc. 535 (Herrera) | 20 |
| 17. | Sever Defendant Herrera | Doc. 535 (Herrera) | 20 |
| 18. | Join Co-Defendants Motions in Limine | Doc. 535 (Herrera) | 21 |
| 19. | Dismiss for Variance | Doc. 535 (Herrera) | 21 |
| 20. | Preclude *Bruton* Statements | Doc. 536 (Loveless) Doc. 540 (Dolan) | 21 |
| 21. | Preclude Evidence of Failure to Report | Doc. 537 (Loveless) | 23 |
| 22. | Allow Deposition of Morena De Jesus | Doc. 540 (Dolan) | 25 |
| 23. | Preclude Francis's Testimony of Dolan's Responsibilities or Motives | Doc. 540 (Dolan) | 27 |
| 24. | Compel Discovery About Cooperators | Doc. 540 (Dolan) | 27 |

17-CR-00623-JLS

| 25. | Allow Leading Questions on Direct of Adverse Witnesses | Doc. 540 (Dolan) | 28 |
| 26. | Preclude Evidence of Cooperator Hearsay Statements | Doc. 540 (Dolan) | 28 |
| 27. | Allow Prior Inconsistent Statements Through Case Agent | Doc. 540 (Dolan) | 30 |
| 28. | Exclude Evidence of Prostitution Other Than as a Thing of Value | Doc. 540 (Dolan) | 30 |
| 29. | Preclude Testimony that Cooperators Are Required to Tell the Truth | Doc. 540 (Dolan) | 32 |

## 1.  This Court Should Deny Defendant Newland's Motion to Produce Non-Existent *Giglio* Material

This Court should deny Defendant Newland's repeated requests for *Giglio* material regarding Leonard Francis that does not exist.  As he has speculated in his original motion, Doc. 382, and again in his motion in limine, Doc. 525, Defendant Newland believes that the United States may have conferred some non-public benefit to Francis regarding Francis's forfeiture obligation and his medical release.  This speculation is incorrect.

As explained in its motions in limine, Doc. 528 at 24, under *Giglio*, the United States must produce material impeachment information, such as any benefit it provides to a witness.  *United States v. Sedaghaty*, 728 F.3d 885, 901 (9th Cir. 2013) (reversing conviction based on prosecution's failure to disclose payments made to witness).  Likewise, a defendant has the right to cross-examine a government witness regarding a benefit conferred by the prosecution.  *United States v. Larson*, 495 F.3d 1094, 1105 (9th Cir. 2007) (ruling that precluding cross-examination regarding benefit of prosecutor's sentencing recommendation was error).  But a defendant's speculation that the United States conferred a benefit, when the United States has represented that it has not done so, is not impeachment material and is not a basis for cross-examination.  *United States v. Chang Da Liu*, 538 F.3d 1078, 1087 (9th Cir. 2008) (ruling that defendant's speculation that prosecution granted a witness immunity, when prosecution denied such action, was not impeachment material).

17-CR-00623-JLS

Regarding Francis's financial obligations, the only agreement that the United States has with Francis on this topic is his plea agreement and the forfeiture addendum.  No. 13-CR-03781-JLS, Docs. 125 and 125-1.  Francis agreed to a forfeiture amount of not less than $35,000,000, with $5,000,000 immediately remitted by Francis.  No. 13-CR-03781-JLS, Doc. 125-1.  Since there is no other benefit conferred to Francis by the United States on this matter, there is no other *Giglio* material to disclose.

In addition, the United States has made numerous productions to Defendant Newland (and the entire defense team) regarding Francis's financial status.  In September 2017 and February 2018, the United States produced over 2,500 pages of responsive financial records, primarily credit card statements and bank records.  At that time, the United States also made available the entire universe of the investigative material collected in this matter, and subsequently responded to additional discovery requests.  On October 7, 2020, the United States produced an additional set of potentially responsive documents. And the United States further identified additional boxes of hard copy financial records and invited Defendant Newland to discuss reviewing or copying those documents.

Regarding this Court's order temporarily releasing Francis for medical reasons, the United States points to its motions in limine, Doc. 528 at 24, and repeats that it has provided Francis with no benefit in connection with his temporary release.  This Court has intimated as much on several occasions.  Doc. 262 at 36 ("The Court is not inclined to require disclosure of the request related to Mr. Francis's medical furlough.  Mr. Francis's medical furlough is the result of medical necessity, not government largess and is being overseen by the court."); Doc. 401 at 9 ("The Court will reiterate that it has overseen Mr. Francis's medical furlough and that it is necessitated by legitimate medical needs.").  Moreover, to the extent that Defendant Newland requests information not about any benefits conferred

4

by the United States, but about Francis's medical condition in general, Doc. 525 at 4–5, this information is not *Giglio* material.[1]

In short, the United States understands and will comply with its obligations under *Giglio*. The United States will produce all *Giglio* material, in its possession,[2] in line with its proposed schedule, Doc. 529, or any other schedule the Court imposes. And if the United States receives any other discoverable material between now and trial, the United States will produce that material.

## 2.    Non-Opposition to Defendant Newland's Motion to Rely on Defendant Dolan's Subpoenas

The United States does not oppose Defendant Newland's request to rely on the subpoenas issued by Defendant Dolan, Doc. 526, on the condition that Defendant Newland's reliance extends to any outcome of Defendant Dolan's subpoenas as well. For example, the Department of Defense may determine that Defendant Dolan's subpoenas are insufficient under the applicable Code of Federal Regulations, including 32 C.F.R. § 97.6 et seq., or may respond that official information may not be released, that Department of Defense personnel may not be used as witnesses, or it may impose conditions upon the release of information or the testimony of the personnel. Or, the United States may reach a stipulation with Defendant Dolan permitting him to call one agent to introduce prior

---

[1]    Defendant Newland's request in this regard is confounding in light of the fact that the defense team is in possession of Francis's testimony as to his medical condition, treatment, and the conditions of his medical furlough from the Morales court martial, which representatives from the defense team in this case attended in person.

[2]    As indicated, the medical furlough was requested by Francis through his attorneys, granted by the Court, and is overseen by the Court through the U.S. Probation Office. The information sought by Defendants about Francis's living situation is thus not in the possession of the United States, but in the possession of Francis's counsel and Probation. (To underscore this point, the United States does not have unfettered access to Francis; the case agents must make arrangements with Francis's attorneys to speak with him.) While the Court could issue an order requiring Probation or Francis's attorneys to supply this information, for the reasons above, this is not impeachment material.

inconsistent statements of multiple prosecution witnesses as he has offered.  *See* Doc. 540 at 16–19.  If Defendant Newland does not independently subpoena the witnesses, he would be bound by the outcome of Defendant Dolan's subpoenas, and could not independently require that the witnesses be present.

### 3. The Court Has Discretion to Read the Indictment and Provide Copies to the Jury

"The decision to read the indictment to the jury is within the sound discretion of the trial court," as is the decision whether to send to the jury room a copy of the indictment. *United States v. Polizzi*, 500 F.2d 856, 876 (9th Cir. 1974); *see also United States v. Scott*, 37 F.3d 1564, 1576 (10th Cir. 1994) ("Courts have held that it is not error to read an indictment to the jury as part of a court's instructions if the jury is instructed that the indictment is not evidence."); *United States v. Jones*, 587 F.2d 802, 805 (5th Cir. 1979) ("This court has held many times that it is not error for the trial judge to read the entire indictment to the jury if the judge also instructs the jury that the indictment is not to be considered as evidence."); *United States v. Press*, 336 F.2d 1003, 1016 (2d Cir. 1964) ("[i]t is not improper for the court to read the indictment in its entirety or portions thereof to the jury.  Indeed, in protracted cases involving numerous counts such as this one, reference to the indictment often serves as a helpful guide in delineating the issues the jury may be called on to decide.  Similarly, it is not error to give the indictment to the jury for use during its deliberations.  The decision to do so rests in the sound discretion of the court."); *United States v. Hugs*, 384 F.3d 762, 765 (9th Cir. 2004) (court directed prosecutor to read indictment at beginning of jury selection); *United States v. Long*, 706 F.2d 1044, 1056 (9th Cir. 1983) (district court did not err in reading indictment to jury as they were cautioned that it was not evidence).

The United States leaves to the sound discretion of the Court whether to read the Indictment and provide copies to the jury.

4.     **The Court Should Deny Defendant Lausman's Renewed Motion to Dismiss Count 12 and Give the United States's Proposed Venue Instruction Regarding Count 12**

Defendant Lausman's previously rejected motion to dismiss Count 12 for lack of venue should be denied, once again, and the jury should be instructed that it may find venue where the investigation was being conducted.

This Court has already addressed and decided Defendant Lausman's motion to dismiss Count 12 of the Indictment on venue grounds. Defendant Lausman initially raised this motion on March 1, 2019. Doc. 248. The Court addressed this motion and tentatively denied it on May 23, 2019, finding that "on a pretrial motion to dismiss, the Court is bound to presume the truth of the allegations in the charging document, which allege that Count 12 was committed in this district and elsewhere. In addition, it appears that venue would be appropriate because the proceeding allegedly sought to be obstructed was pending in this district." Doc. 278 at 11–12. On June 6, 2019, the Court issued a written order adopting its tentative oral ruling on this issue as final. Doc. 288. Over two years later, Defendant Lausman has now re-raised his motion to dismiss Count 12 on venue grounds, citing the same case law he cited in his previously raised and denied motion. Doc. 531 at 2–9. Defendant Lausman provides no explanation for why he is re-raising the exact same issue, citing to the exact same case law, when the Court's denial of the motion to dismiss is the law of the case.

Moreover, as the United States noted previously, the United States intends to establish at trial that Defendant Lausman destroyed the classified hard drive shortly after he was interviewed by agents relating to the investigation occurring in the Southern District of California. Following this interview, and after Francis's arrest in the Southern District of California, Defendant Lausman destroyed the hard drive. Almost every court that has considered venue for the obstruction of justice statutes more generally has found that venue "is proper in the district in which the proceeding sought to be obstructed is pending even

17-CR-00623-JLS

though the would-be obstructive acts took place elsewhere." *United States v. Reed*, 773 F.2d 477, 486 (2d Cir. 1985); *see also United States v. Cofield*, 11 F.3d 413, 419 (4th Cir. 1993) (finding that crimes described in §§ 1503, 1512, and 1513 "are of the same genre. Their purpose is to protect the judicial process and the participants in the process" and that venue therefore lies "in the district where the judicial proceeding that the accused sought to affect is pending"); *United States v. Tedesco*, 635 F.2d 902, 906 (1st Cir. 1980) ("We hold that venue under section 1503 is to be determined by focusing on which court is affected by the attempt to influence, obstruct, or impede the due administration of justice.  It is the impact of the acts, not their location, that controls."); *United States v. Scaife*, 749 F.2d 338, 346 (6th Cir. 1984) (finding proper venue for 18 U.S.C. § 1512 obstruction prosecution "where the court and the grand jury were located"); *United States v. Frederick*, 835 F.2d 1211, 1215 (7th Cir. 1987); *but see United States v. Trie*, 21 F. Supp. 2d 7, 18 (D.D.C. 1998).  The Court should therefore deny Defendant Lausman's re-raised motion.

The United States agrees with Defendant Lausman that a venue jury instruction is proper, as the United States must prove venue to the jury by a preponderance of the evidence.  *United States v. Chi Tong Kuok*, 671 F.3d 931, 937 (9th Cir. 2012).  As such, the United States has proposed that the Court instruct the jury as follows:

> To convict Defendant Lausman of the offense charged in Count 12, the United States must prove by a preponderance of the evidence that the investigation of this matter by DCIS and NCIS was being conducted in the Southern District of California.  The United States need not prove, however, that defendant Lausman himself knew that that the investigation of this matter was being conducted in the Southern District of California.  The United States only has to prove this fact by a preponderance of the evidence which means that the fact is more likely than not.

United States's Proposed Non-Model Jury Instructions, Doc. 539 at Instruction 66.

5.       **The Court Should Admit the Recording of Loveless's November 5, 2013 Interview**

Defendant Loveless's November 5, 2013 recording and transcript should be admitted on the basis of testimony by a witness with knowledge.  On November 5, 2013, Defendant Loveless was interviewed by NCIS Agent Eric Maddox, along with two prosecutors assigned to the case.  *See* Doc. 532, Ex. 1.  That interview was recorded.  *Id.*  Though Defendant Loveless now seeks to preclude the recording of his interview because the United States attempted to enhance the recording to make it more intelligible for purposes of transcription, Defendant Loveless does not dispute any portions of the enhanced recording or claim that the recording was actually changed in any way.  *See* Doc 532 at 3–6.  Nor does he claim that the enhanced recording in any way changed or modified his statements to law enforcement as he recalls them.  *Id.*  The United States anticipates providing the excerpts that it intends to introduce at trial to the Defendants prior to trial.  Indeed, two of the statements that the United States intends to introduce are cited in the Indictment.  Indictment ¶ A217.

Defendant Loveless misapprehends the requirements of Federal Rule of Evidence 901.  Under the rule, the United States can authenticate the recording by using testimony of a witness with knowledge.  Likewise, "[t]he government need only make a prima facie showing of authenticity 'so that a reasonable juror could find in favor of authenticity or identification.'"  *United States v. Workinger*, 90 F.3d 1409, 1415 (9th Cir. 1996).  "Once the prima facie case for authenticity is met, the probative value of the evidence is a matter for the jury."  *Id.*  In other words, the United States can call agent Maddox, and ask him to review the enhanced recording and the transcript made therefrom and confirm that they are each a true and accurate capturing of the interview with Defendant Loveless.  *See United States v. Yu Sung Park*, 473 F. App'x 706, 707 (9th Cir. 2012) ("The government may lay a proper foundation for admission of recorded conversations when a government agent

testifies at trial that the agent was privy to the recorded conversations, and can identify the voices on the recordings.").

The fact that there may be some gaps in the recording because some portions are inaudible does not undermine the authenticity of that recording or render it inadmissible. "A recorded conversation is generally admissible unless the unintelligible portions are so substantial that the recording as a whole is untrustworthy." *United States v. Gadson*, 763 F.3d 1189, 1205 (9th Cir. 2014); *United States v. Tisor*, 96 F.3d 370, 377 (9th Cir. 1996).[3]

The case law relied upon by Defendant Loveless does not counsel a different result. For example, in *United States v. Thompson*, 130 F.3d 676, 683 (7th Cir. 1993), the FBI agent placed a recording device in the prison library where two prisoners met, and retrieved that device after the conversation had ended, but was not an actual participant or monitor of that conversation. A separate agent who had also not participated in the conversation subsequently enhanced the tapes so that they were more intelligible. *Id.* at 684. The Seventh Circuit found that the district court properly admitted the enhanced recording, finding that the United States had properly authenticated the tapes after calling the FBI agent and the agent who had enhanced the tapes to testify at trial, as well as one of the prisoners who had participated in the conversation. *Id.* Similarly, in *Tisor*, the Ninth Circuit affirmed the admission of recordings, despite the defendant's claim that large portions were inaudible, noting, "[p]rior to the admission of the tapes, the prosecution presented evidence that the tapes accurately reflected the conspirator's conversations regarding the drug transactions. No evidence was presented by [defendant] to rebut this testimony." 96 F.3d at 376–77. The record in this case is a far cry from the type of circumstance in which a court found the

---

[3] Contrary to Defendant Loveless's representation, the mere fact that substantial portions are inaudible on a tape is not alone sufficient to exclude the recording. *Compare* Doc. 523 at 5 *with Tisor*, 96 F.3d at 377.

17-CR-00623-JLS

unintelligible portions were so substantial that the recording as a whole was untrustworthy. *Cf. United States v. Alvarez-Farfan*, 71 F. App'x 755, 756 (9th Cir. 2003).[4]

Indeed, the United States need not play the recording at all, and could simply call agent Maddox to testify regarding his recollection of Defendant Loveless's statements. *See* Fed. R. Evid. 901. Defendant Loveless is welcome to cross-examine the agent regarding the gaps in the recording. He may also cross-examine the agent regarding the enhancement process, or affirmatively call the agent who assisted in enhancing the audio recording and elicit testimony regarding that process. But Rule 901 only requires that the recording and transcript be authenticated by a witness with knowledge for it to be admissible, which the United States will do through the agent who was physically present during the interview.

Finally, the United States's introduction of portions of Loveless's interview does not implicate Rule 106. As noted in the United States's motions in limine, "Rule 106 does not compel admission of otherwise inadmissible hearsay evidence." *United States v. Collicott*, 92 F.3d 973, 983 (9th Cir. 1996), as amended (Oct. 21, 1996). Indeed Rule 106 only applies where the full statement serves to correct a misleading impression of a prior statement, which occurred because the statement was taken out of context. *Id.*; *see also United States v. Meraz*, 663 F. App'x 580, 581 (9th Cir. 2016) (finding that "[t]he two excerpts the government introduced were not misleading, and the district court correctly determined that Federal Rule of Evidence 106 did not apply"); *United States v. Smith*, 659 F. App'x 908, 914 (9th Cir. 2016) (rejecting defendant's claim that excerpts offered by United States were misleading as a whole, and finding that court properly excluded "several somewhat-exculpatory statements" because "those statements were inadmissible hearsay and Rule 106 did not require their admission"). The fact that some portions of Defendant Loveless's

---

[4]   Although not referenced in the opinion, according to the appellate briefs filed in *Alvarez-Farfan*, that recording only reflected one half of the conversation (that of the informant), the defendant's responses were not audible, and multiple experts had reached differing conclusions regarding the translation of the small portion of the tape that was audible. Answering Brief, *Alvarez-Farfan*, 2002 WL 32100054, at 30.

transcript are inaudible does not mean that the United States is taking any portions out of context, and Rule 106 would not allow Defendant Loveless to introduce his own statement regardless.  The Court should deny Defendant Loveless's motion.

**6.     The Court Should Allow the United States to Present the Full Evidence of the Conspiracy at Trial**

The Defendants' motion to limit the evidence of the full conspiracy is contrary to the law and should be denied.  The Ninth Circuit has held that "the government in a conspiracy case may submit proof on the full scope of the conspiracy; it is not limited in its proof to the overt acts alleged in the indictment." *United States v. Rizk*, 660 F.3d 1125, 1131 (9th Cir. 2011); *see also United States v. Montgomery*, 384 F.3d 1050, 1062 (9th Cir. 2004); *United States v Markosian*, 637 Fed.App'x 286, 292 (9th Cir. 2015) (affirming admission of evidence of uncharged conduct because that conduct "comprised the conspiracy" and "occurred within the temporal scope of the conspiracy").  Indeed, the Ninth Circuit has held "that a defendant may be convicted for conspiracy upon proof of an overt act not alleged in the indictment, so long as there is no undue prejudice." *United States v. Bentson*, 220 F. App'x 643, 647 (9th Cir. 2007) (citing *Brulay v. United States*, 383 F.2d 345, 350–51 (9th Cir.1967)).  Citing no law, Defendant Lausman asks this Court to limit the United States's presentation of its case to the overt acts in the Indictment, claiming, incredibly, that after over four years of litigating this case and reviewing discovery, he may somehow be caught flat footed at trial.  Doc. 534 at 5.  The Court should reject this argument, follow the law, and deny Defendant Lausman's motion.

The Court should similarly deny Defendant Dolan's attempts to prevent the United States from presenting evidence regarding overt acts actually alleged in the Indictment.  *See* Doc. 540 at 8–12; *see also* Indictment ¶ 36 at A79, A81, A99, A105, A119, A123, A126, A127, A137, A141, A166.  Defendant Dolan incorrectly claims that his repeated actions assisting Leonard Francis in collecting funds from the U.S. Navy do not qualify as either official acts or official duties and therefore should be precluded by the Court.  As noted

17-CR-00623-JLS

above, the United States is entitled to present the complete evidence of the conspiracy, including actions charged in the Indictment that the United States believes constitute his being influenced in an official act or being induced to do or omit to do any action in violation of an official duty.  *See Rizk*, 660 F.3d at 1131.[5]  Defendant Dolan is then free to present evidence, if he so chooses, or simply argue to the jury, based on the jury instructions given by the Court, that what the United States has presented does not meet those definitions. Ultimately the Court will instruct the jury as to the law regarding an official act, and an official duty, and the jury will decide based on the facts presented at trial and the law as provided by the Court whether Defendant Dolan is guilty. [6]  *See Shannon v. United States*, 512 U.S. 573, 579 (1994) ("The jury's function is to find the facts and to decide whether, on those facts, the defendant is guilty of the crime charged.").

---

[5]     Because all evidence of the conspiracy is admissible, particularly those acts specifically alleged in the indictment, that evidence is not more prejudicial than probative. *See* Fed. R. Evid. 403; *see also United States v. Hankey*, 203 F.3d 1160, 1172 (9th Cir. 2000) ("Relevant evidence is inherently prejudicial; but it is only unfair prejudice, substantially outweighing probative value, which permits exclusion of relevant matter under Rule 403.  Unless trials are to be conducted as scenarios, or unreal facts tailored and sanitized for the occasion, the application of Rule 403 must be cautious and sparing." (quoting *United States v. Mills*, 704 F.2d 1553, 1559 (11th Cir.1983)).

[6]     Moreover, Dolan's apparent claim that he was simply taking lawful action assisting Leonard Francis does not absolve him from the crime of bribery.  As the Supreme Court noted in dicta in *City of Columbia v. Omni Outdoor Advert., Inc.*, 499 U.S. 365, 378, (1991), "A mayor is guilty of accepting a bribe even if he would and should have taken, in the public interest, the same action for which the bribe was paid."  *See also United States v. Bryant*, 655 F.3d 232, 245–46 (3d Cir. 2011) (approving instruction that the jury may find a payment was a bribe "even if you also find it was paid, in part, for legitimate work if it was also paid, in part, in return for [the public official's] official action"); *United States v. McDonough*, 727 F.3d 143, 159 (1st Cir. 2013) (approving instruction that stated, "[T]he government does not have to establish that [the public official] would not have taken official action . . . without [the charged] payments.").

### 7.     The United States Will Follow Rule 801(d)(2)(E) for Co-Conspirator Statements

The United States intends to offer into evidence co-conspirator statements as non-hearsay under Federal Rule of Evidence 801(d)(2)(E).  As the Ninth Circuit has explained, there are three requirements under the rule: (1) the statement must be made in furtherance of the conspiracy; (2) the statement must be made during the course of the conspiracy; and (3) there must be independent proof of the existence of the conspiracy and the connection of the declarant with it.  *United States v. Perez*, 658 F.2d 654, 658 (9th Cir. 1981).  Under the third prong, the United States must provide evidence other than the statement to establish a prima facie case of conspiracy.  *Id.*  The United States need not prove the conspiracy beyond a reasonable doubt for the statement to be admitted.  *Id.*  Circumstantial evidence is often sufficient to meet this burden.  *Id.*  Once the conspiracy has been demonstrated, only "slight evidence" is necessary to connect the declarant to the conspiracy.  *Id.*  Finally, the United States need not make the prima facie case of conspiracy before the Court admits a statement.  *Id.*  Instead, the Court can admit a statement conditionally, with the statement subject to being stricken if the United States does not demonstrate a conspiracy.  *Id.*  The United States understands the requirements of Rule 801(d)(2)(E) and will follow them.

Defendant's Lausman's belief, that the United States must first prove the conspiracy before the admission of a co-conspirator statement, Doc. 534 at 6, is wrong.  For the admission of a co-conspirator statement, "[t]here is no immutable order of proof."  *Perez*, 658 F.2d at 658.  The Court can admit a co-conspirator statement before proof of the conspiracy, subject to the condition that the United States must eventually make a prima facie case of conspiracy.  *Id.*

Furthermore, though Defendant Lausman argues that ordinary business dealings do not establish a conspiracy, Doc. 534 at 6–7, the Indictment alleges, and the evidence will show, that Defendant Lausman's dealings with Leonard Francis were far from ordinary. There was nothing ordinary about Defendant Lausman's acceptance of gifts from Leonard Francis, including hotel stays, hotel upgrades, lavish dinners, and other gifts.  *See*

17-CR-00623-JLS

Indictment ¶¶ A16, A57, A60, A61, A90, A100–02, A106, A118, A185.  Likewise, there was nothing ordinary about Defendant Lausman, after having received such gifts, then acting on behalf of Francis, including writing letters endorsing GDMA, criticizing the U.S. Navy's use of a GDMA competitor, and exerting pressure within the U.S. Navy to steer business to GDMA.  *See* Indictment ¶¶ A93, A119, A185, A188, A192–94, A197.  And while it is true that Defendant Lausman's job was to captain a ship, Doc. 534 at 7, the crime here, in Defendant Lausman's own words, was that he did so as the "obedient and humble servant" of Francis.  Indictment ¶ 56.  This is to say nothing of the acts of the other Defendants, which likewise establish the same conspiracy and pattern of accepting gifts from Francis in exchange for action on his behalf.

**8.    Rule 404(b) Evidence Should not be Excluded**

The United States has proposed a schedule of pretrial disclosures, including deadlines for disclosure of Rule 404(b) evidence.  Doc. 529.  The Defendants' motions to preclude evidence for lack of Rule 404(b) notice, Docs. 534 at 10, 535 at 6, should be denied as premature.

**9.    Defendant Lausman's Motion to Preclude Evidence of Asking for a Lawyer Should Be Denied as Moot**

The United States does not intend to introduce any evidence that Defendant Lausman asked to speak to a lawyer if his house was going to be searched.  Defendant Lausman's motion, Doc. 534 at 10, should be denied as moot.

**10.   Whether Defendants Engaged in "Official Duty" Bribery Is a Matter of Fact for the Jury**

This Court should deny Defendant Lausman's request to preclude the United States from referencing or arguing a theory of bribery based on the acceptance of items of value as a violation of "official duties."  Doc. 534 at 13.  The definition of "official duty" and bribery will be in the Court's jury instructions.  Ultimately, the decision of whether a defendant committed bribery by being induced to do or omit any act in violation of his

17-CR-00623-JLS

official duties is an issue of fact that the jury must decide, guided by the Court's instructions. Given that the Court has not yet decided what the instructions will be, the United States believes it is premature for the Court to prohibit argument regarding a theory of liability, and that Defendant Lausman's arguments are best saved for the jury instruction conference. Once the Court decides on the jury instructions, proper argument relating to those instructions will follow.

Moreover, the United States has alleged that Defendants' actions violated numerous official duties. Accepting things of value from Leonard Francis was one such manner in which Defendants violated their official duties and was a violation of many of those duties. For example, in accepting from Leonard Francis, who was a prohibited source, gifts like prostitutes that were themselves a violation of official Navy rules and regulations, Defendants put themselves in the debt of and under the power of a foreign national, giving Francis the ability to perpetuate the scheme and further his unlawful ends. In accepting gifts from Francis, Defendants additionally violated official duties relating to national security and to their security clearances, including reporting requirements regarding improper foreign influence and improper conduct by a Navy contractor. *See e.g.*, Department of Defense Directive (DoDD) 5240.06 (requiring mandatory reporting of "[a]ttempts to place DoD personnel or contractors under obligation through special treatment, favors, gifts, or money); U.S. Navy Regulations, Article 1115 (requiring Naval members to report fraud, collusion, or improper conduct by contractors). The Court should deny Defendant Lausman's motion.

**11. Evidence Regarding Gifts Provided to Carol Lausman Should Be Admitted**

As set forth elsewhere in Part 6 of this pleading, evidence of the charged conspiracy may be introduced. The evidence about Carol Lausman relates both to items of value given indirectly to Defendant Lausman, and to the official acts Defendant Lausman took.

First, gifts given to Carol Lausman constitute bribes to Defendant Lausman. The relevance of such evidence in a bribery case inheres in the statute itself. Defendant Lausman

16

has been charged with violations of Title 18, United States Code Sections 201(b)(2)(A) and (C), which punish whoever:

> (2) being a public official . . . directly or indirectly, corruptly demands, seeks, receives, accepts, or agrees to receive or accept anything of value personally or for any other person or entity, in return for:
>
> (A) being influenced in the performance of any official act; . . . [or]
>
> (C) being induced to do or omit to do any act in violation of the official duty of such official or person.

Thus, the statute itself contemplates bribery both "directly or indirectly" -- that is, through or for other individuals.  More to the point, the statute includes in the prohibited conduct receiving anything of value "personally or for any other person."  Limiting the bribery statute to cover items of value given directly, and personally, to the public official would ensure that only the most foolish or least imaginative briber would be ensnared.  Bribes often take the form of gifts to a public official's family members.  *See, e.g.*, *United States v. Jefferson*, 674 F.3d 332, 356 (4th Cir. 2012), as amended (Mar. 29, 2012) (bribery conviction sufficient where bribers were paying Congressman Jefferson -- by delivering money and things of value to enterprises owned by his family members -- with the specific understanding that he would assist in their business ventures); *United States v. McNair*, 605 F.3d 1152, 1198 (11th Cir. 2010) (government contractor conspired to bribe city engineer when it provided education scholarship to engineer's son); *United States v. Kelley*, 461 F.3d 817, 828 (6th Cir. 2006)  (county official was bribed when he solicited and accepted a $23,125 birthday party for his wife at the Ritz–Carlton hotel); *United States v. Biaggi*, 909 F.2d 662, 697 (2d Cir. 1990) (bribes to congressman included stock options given to his son).

It is sufficient that Defendant Lausman received items of value "indirectly," in that he knew that the items were given to Carol Lausman in order to influence Defendant Lausman in the performance of his official duties or to induce official acts.  The Court

17

should deny Defendant Lausman's attempts to impose on the prosecution that which the law does not require. No case law or statute requires that the United States "first establish that Mr. Lausman authorized or requested" that Carol Lausman ask for items from GDMA before admitting such evidence. Whether he directed her to ask or not, Defendant certainly knew that GDMA was providing items of value to Carol Lausman. These included luxury hotel accommodations and airport transportation for her during foreign port visits, a golf outing for them both, a designer Versace purse that Defendant Lausman personally handled, and a potential trip to Japan for the family. Indictment ¶ A193, A205, A208, A211. Indeed, Defendant Lausman intentionally invoked benefits to his wife in communications with Francis. In a July 21, 2010 email, for example, Defendant Lausman expressly acknowledged to Francis that "Ed [Aruffo]" had contacted his wife, and that "Carol is excited" about the outings Aruffo had planned for her. Francis responded, "Glad Ed was able to assist and that Carol is happy."

Second, communications about Carol Lausman were part of the quid pro quo of this bribery scheme. By communicating Carol's travel plans to Francis and GDMA employees, the Lausmans obliquely communicated where the U.S.S. George Washington was headed, and when. For example, in June 2010, Ed Aruffo said he would try to find out whether the U.S.S. George Washington would be traveling to Kuala Lumpur, Malasia, and specified how he planned to do so: "I will ask Lausman's wife if she is heading to [KL]." Indictment ¶ A191. Later, on June 21, 2010, Defendant Lausman vaguely mentioned trying to get the U.S.S. George Washington to Singapore later that year, but then proceeded to tell Francis his wife's upcoming itinerary for travel in July, which included Singapore, Kuala Lumpur, and Japan. Indictment ¶ A193.

Accordingly, evidence regarding Defendant Lausman's wife should be admitted as relevant to items of value and violations of official duty.

18

**12.    Non-Opposition to Requests for Exhibits to Be Used in Opening**

The United States has proposed an order requiring the disclosure of exhibits to be used in opening statements by no later than three days before trial.  Doc. 529.  The United States opposes the motion to require pretrial notice of demonstratives.  Doc. 534 at 16.  The prosecution may wish to prepare a PowerPoint presentation for opening and would oppose an order requiring its disclosure before trial.

**13.    The United States Will Follow the Rules of Evidence to Admit Emails**

The United States intends to offer emails into evidence from the servers of GDMA. As explained in its motions in limine, Doc. 528 at 35, the United States will establish that the emails are authentic as business records under Federal Rule of Evidence 902(11), foreign business records under 18 U.S.C. § 3505, and as data copied from an electronic source under Rule 902(14).  In addition, the United States can authenticate emails through the live testimony of a person with knowledge.  With respect to the admission of the content of emails, the United States will rely primarily on the admission of a party opponent or the statement of a co-conspirator as non-hearsay under Rule 802(d)(2)(A) and (E), or other non-hearsay or hearsay exceptions as appropriate.

Defendant Herrera incorrectly claims that emails sent between the Defendants and Francis cannot be business records, since the U.S. Navy is not in the business of criminal conspiracies.  Doc. 535 at 4.  But what Defendant Herrera misunderstands is that the United States would proffer the emails as business records of GDMA, not the U.S. Navy.  A competent officer or employee of GDMA will attest that the emails met the requirements of Rule 902(11).  Even if the emails were not business records, the United States could still show that the emails are authentic as data copies from electronic sources under Rule 902(14) or have a live witness authenticate the emails.  In addition, Defendant Herrera's bare assertion that emails are double hearsay, Doc. 535 at 5, does not make it so.  Again, the emails are non-hearsay as out of court statements made as a party admission or as a statement of a co-conspirator.

17-CR-00623-JLS

**14.   Expert Witnesses Should Not Be Excluded for Lack of Notice.**

The United States has proposed a schedule of pretrial disclosures, including deadlines for disclosure of expert witnesses.  Doc. 529.  The United States also moved in limine to admit the testimony of five experts and additional lay witnesses.  Doc. 528 at 28–34.  The motion to preclude expert testimony for lack of notice, Doc. 535 at 5, should be denied as premature.

**15.   Relevant Grand Jury Transcripts Will Be Disclosed**

The United States has proposed a schedule of pretrial disclosures, including deadlines for disclosure of Jencks statements, which would include any grand jury testimony by witnesses.  Doc. 529.  The motion to compel disclosure of grand jury transcripts, Doc. 535 at 7, should be denied as premature.

**16.   The Court May Provide Individual Copies of Jury Instructions**

The United States leaves to the sound discretion of this Court and its customary practice whether to provide the jurors with individual copies of the jury instructions.  Doc. 535 at 8.

**17.   Defendant Herrera's Untimely and Repetitive Motion to Sever Should Be Denied**

Defendant Herrera previously joined in motions to sever filed by his co-defendants.  Doc. 404.   The United States responded to initial severance motions by Defendants Newland, Dolan, Loveless, and Lausman, Doc. 237, and again to additional severance motions filed by Defendants Dolan, Newland, Loveless, and Lausman, and joined by Defendants Shedd and Herrera, Doc. 413.

The Court denied the various motions for severance.  Doc. 418.  Defendant Herrera does not explain why the Court's prior ruling -- now the law of the case -- should be re-visited.  His motion should be denied.

**18.     Non-Opposition to Defendant Herrera's Motion for Joinder**

The United States does not oppose Defendant Herrera's motion to join in the motions in limine filed by co-defendants.  Doc. 535 at 10.

**19.     The Indictment Should Not Be Dismissed Because One Conspiracy Is Alleged**

Defendant Herrera's motion to dismiss for fatal variance, Doc. 535 at 10, should be denied.  The Court has previously considered motions to dismiss by Defendant Loveless and Defendant Dolan arguing that the indictment improperly alleged multiple conspiracies, and has denied those motions.  Docs. 204, 217, 237 (United States's response), 246 (Defendant Loveless's reply), 288 (Order).  Defendant Dolan, for one, raised the same *Kotteakas* concern about multiple conspiracies that Defendant Herrera now raises.  *See* Doc. 204 at 47–48.  Defendant Herrera's motion, which is based on the allegations in the Indictment and the "likely proof presented by the government," adds nothing to the previously decided motions, which are now the law of the case.

If Defendant Herrera believes the evidence adduced at trial supports a finding of the existence of multiple conspiracies, Defendant Herrera may request a jury instruction on multiple conspiracies, or may make a motion at the close of the evidence.  *See* Ninth Circuit Model Jury Instruction §8.22; *United States v. Singh*, 979 F.3d 697, 721 (9th Cir. 2020), *cert. denied sub nom. Matsura v. United States*, No. 20-1167, 2021 WL 2044557 (U.S. May 24, 2021)) (approving multiple conspiracy instruction that reflected defendant's theory of case).

**20.     The Court Should Admit the Defendants' Statements with a *Bruton* Limiting Instruction and Deny Dolan's Renewed Motion for Severance**

Defendant Dolan's renewed motion for severance, Doc. 540 at 27, should be denied, and the Court should admit the Defendants' statements with limiting instructions.  As the United States discussed in its motions in limine, Doc. 528 at 40–44, the United States does not intend to introduce any statements made by the Defendants to law enforcement in which one co-defendant directly implicates another co-defendant by name.  The United States does

17-CR-00623-JLS

anticipate introducing statements by the Defendants inculpating themselves, as well as more general statements made by some Defendants relating to the conspiracy, and certain provably false exculpatory statements (such as those statements made by Defendant Loveless and Defendant Lausman about their own liability cited to in the Indictment).[7]  *See* Indictment ¶ A216, A217.

Under *Bruton v. United States*, 391 U.S. 123 (1968) and its progeny, "the admission of a statement [to law enforcement] made by a non-testifying codefendant violates the Confrontation Clause when that statement facially, expressly, or powerfully implicates the defendant."  *United States v. Hernandez-Orellana*, 539 F.3d 994, 1001 (9th Cir. 2008).  A statement does not violate *Bruton* where it only becomes incriminating when linked with evidence introduced later at trial, particularly when that statement is introduced with a limiting instruction.  *Richardson v Marsh*, 481 U.S. 200, 208 (1987); *see also United States v. Mikhel*, 889 F.3d 1003, 1044 (9th Cir. 2018) ("[a] statement is not facially incriminating merely because it identifies a defendant; the statement must also have a sufficiently devastating or powerful inculpatory impact to be incriminatory on its face.").  The United States therefore proposed introducing any statement by a Defendant with an appropriate limiting instruction, limiting consideration of such evidence to that individual alone.

Because the United States does not intend to introduce any inculpatory statements that require redaction -- in other words, the United States does not intend to introduce any statement that facially implicates another co-defendant -- *Bruton* is not triggered.  *See Hernandez-Orellana*, 539 F.3d at 1001 (finding no *Bruton* violation where "the government was required to redact any damaging statements in the transcripts with respect to defendant. And a review of the record confirms that no statement introduced even mentioned [defendant]"); *United States v. Hernandez*, 608 F.2d 741, 749 (9th Cir. 1979) (explaining that "[w]h]ere a statement does not allude to the defendant, or where all references have

---

[7]    The United States anticipates providing the Defendants with the actual clips it intends to introduce pursuant to the Court's scheduling order regarding exchange of exhibits.

been deleted, his right of confrontation is not abridged"); *United States v. Totten*, 198 F. App'x 614, 616 (9th Cir. 2006) (finding no Bruton error, because co-defendant statements introduced at trial "did not implicate anyone except himself").

False exculpatory statements, such as those the United States intends to introduce against at least Defendant Loveless and Defendant Lausman, do not implicate *Bruton* at all because they are not admitted for their truth. *United States v. Hackett*, 638 F.2d 1179, 1186 (9th Cir. 1980) (finding no *Bruton* issue because co-defendant's statements "were admitted not for their truth, but merely for the fact that the statements were made").

Because the United States does not intend to introduce any statements that implicate *Bruton*, severance is unnecessary and inappropriate and the Court should deny the reraised motions to sever by Defendants Loveless, Doc. 536, and Dolan.

## 21.    Defendant Loveless's Duties and His Violations Are Issues of Fact for the Jury

Defendant Loveless's previously rejected argument that he had no official duty to report misconduct should once again be rejected. This Court has already ruled that Defendant Loveless's official duties are a factual issue to be raised at trial. Doc. 217-1 (motion to dismiss); Doc. 278 at 16 (tentative ruling); Doc. 288 (order making final previous tentative rulings). At trial, the United States will present evidence regarding the scope and applicability of Defendant Loveless's duties and their violation. If Defendant Loveless wishes to argue that there was no such duty because certain facts obviated that duty, it is his right to present that defense and the evidence in support, should he so choose. As the United States noted previously in its response to Defendant Loveless's motion to dismiss, Doc. 237 at 76, Defendant Loveless may be entitled to a defense theory instruction on this particular issue, and he is welcome to suggest such a jury instruction. But preclusion of evidence is not the answer, and the Court should deny Defendant Loveless's motion.

That this must be presented to the jury is evident in that there are myriad factual predicates that must be established before Defendant Loveless's proposed defense can even be considered. Defendant Loveless's notion that he was relieved from his duty to disclose

23

violations of the Uniform Code of Military Justice (UCMJ), under U.S. Navy Regulation 1137, because he was "already criminally involved in such offenses at the time such offenses first come under [his] observation" presumes that Regulation 1137 applies, and that Defendant Loveless recognized that he was "already criminally involved in such offenses." In other words, Defendant Loveless must concede his criminal involvement in the charged conspiracy to commit bribery, and bribery of himself as a public official, for this Regulation to apply. Of course, should Defendant Loveless take the position that nothing he did violated any official duties, including provisions of the UCMJ, then neither Naval Regulation 1137 nor Article 31(a) (protecting him from compelled self-incrimination) would apply.

In addition, it is well established that the crime of bribery is complete at the time of agreement, and the public official need not follow through, or even be able to follow through in order for criminal liability to attach. *United States v. Kimbrew*, 944 F.3d 810, 814 (9th Cir. 2019) ("It is immaterial whether the bribe recipient ever intended to follow through with his end of the bargain, so long as he agreed to perform the official act."). In other words, the crime was complete at the moment Defendant Loveless agreed with Francis to be induced to do or omit to do an official duty, regardless of whether he intended to follow through, or was subsequently somehow absolved of that duty. That the right to self-incrimination attaches after he commits the crime of bribery does not change the fact that Defendant Loveless committed the crime in the first place.

Taking a broader view, Defendant Loveless's fundamental contention -- that a high ranking intelligence officer has no official duty to inform the U.S. Navy about foreign intelligence threats -- is bizarre and is not the law. Defendant Loveless was a captain in the U.S. Navy and served as the N2, Assistant Chief of Staff for Intelligence of the Seventh Fleet. Indictment ¶ 9. As an intelligence officer, Defendant Loveless had a number of duties, including the duty to identify and gather intelligence regarding foreign threats. In addition, as a member of the Department of Defense (DoD), Defendant Loveless had the

duty to report foreign intelligence threats, such as attempts to place DoD personnel under obligation through special treatment, favors, gifts, or money. *See* Indictment ¶ 24 (citing DoDD 5240.06). But instead of doing his job, Defendant Loveless took the hotel stays, parties, and prostitutes that Francis offered and looked the other way. This is classic bribery, such as when a drug trafficking organization pays a law enforcement officer not to investigate. The crime of bribery does not evaporate simply because Defendant Loveless cannot be compelled to incriminate himself after he commits the crime.

Defendant Loveless's motion should be denied, and the parties should be able to present at trial evidence about his official duties.

## 22.  Extrinsic Evidence of Credibility from a Foreign Witness Is Inadmissible Under Rule 608

Defendant Dolan's motion to take and admit as trial testimony the deposition of Morena De Jesus, Doc. 540 at 5, should be rejected because extrinsic evidence of credibility is inadmissible under Federal Rule of Evidence 608.

Defendant Dolan wishes to elicit from Ms. De Jesus testimony about how Francis lied to her, to attack Francis's credibility. Rule 608 expressly prohibits extrinsic evidence used for this purpose. Fed. R. Evid. 608(b) ("[E]xtrinsic evidence is not admissible to prove specific instances of a witness's conduct in order to attack or support the witness's character for truthfulness.") When the sole reason for proffering the evidence is to attack or support a witness's character for truthfulness, no extrinsic evidence is allowed. *United States v. Abel*, 469 U.S. 45 (1984).

Instead, the rules permit the Court to allow cross-examination on specific instances of a witness's conduct, "if they are probative of the character for truthfulness or untruthfulness" of the witness. Fed. R. Evid. 608(b). But, since no extrinsic evidence is allowed, the questioner is stuck with the witness's answer. *United States v. Olsen*, 704 F.3d 1172, 1184 n.4 (9th Cir. 2013).

17-CR-00623-JLS

The scope and extent of cross-examination falls squarely within the Court's sound discretion, *United States v. Weiner*, 578 F.2d 757 (9th Cir. 1978), and is subject to the balancing test in Rule 403, *Olsen*, 704 F.3d at 1184 n.4.  In other words, Rule 403 "modifies" Rule 608 in that otherwise admissible evidence or questioning may nevertheless be excluded if its probative value would be outweighed by unfair prejudice.  *United States v. Price*, 566 F.3d 900, 912 n.13 (9th Cir. 2009); *see also United States v. Hinkson*, 585 F.3d 1247, 1265 (9th Cir. 2009) (upholding district court's limitation on defense counsel's cross-examination of witness's military service record under Rule 403 as substantially outweighed by the danger of confusion of the issues, misleading the jury, undue delay, and waste of time).  Indeed, the trial court has a "specific duty to prevent counsel from confusing the jury with a proliferation of details on collateral matters."  *Weiner*, 578 F.2d at 766.

Confusing the jury with a proliferation of details on collateral matters is precisely what Defendant Dolan appears to seek here, in describing the salacious tale of Francis's romance with Ms. De Jesus.  In addition to directly violating Rule 608, such evidence would also run afoul of Rule 404(b)(1), which prohibits "evidence of a crime, wrong, or other act . . . to prove a person's character, in order to show that on a particular occasion the person acted in accordance with that character."

Defendant Dolan cannot introduce Ms. De Jesus's testimony under Rule 608 or 404 for his stated purpose of showing Francis's "appallingly bad character" or his character for untruthfulness.  While the rule would permit some cross-examination on that relationship, the United States requests that the Court be mindful of Rule 403 in this area, and not permit Defendant Dolan to confuse the jury with a proliferation of details on an alleged years' long extra-marital affair conducted in three countries, involving two minors, with custody proceedings in two family court systems.[8]

---

[8]  This Court may also reject Defendant Dolan's motion on the basis that it is untimely. *See United States v. Aggarwal*, 17 F.3d 737, 742 (5th Cir. 1994) (affirming denial of Rule 15(a) motion that was filed about a month before case went to trial on its third sitting as untimely); 2 Charles A Wright & Arthur R. Miller, Federal Practice and Procedure § 243

17-CR-00623-JLS

The motion for a Rule 15 deposition of Morena de Jesus should be denied.

## 23. The Court Should Permit Witnesses to Testify About Topics for Which They Have Sufficient Personal Knowledge

The Court should deny Defendant Dolan's motion for a prohibition on testimony by Francis as to topics Defendant Dolan does not believe Francis has sufficient foundation. Doc. 540 at 5. The United States will comply with the rules of evidence, and trusts that the Court will too, and only permit testimony for which a sufficient foundation has been established. No blanket pretrial ruling prohibiting categories of evidence by a prospective trial witness is necessary now.

## 24. Discovery About Cooperators Has or Will Be Provided

The United States has proposed a schedule of pretrial disclosures, including deadlines requiring the disclosure of materials required by *Jencks, Giglio*, and *Nobles* no later than two weeks before trial. Doc. 529. These schedules are consistent with the Court's prior remarks on these disclosures. *See* Doc. 401 at 8–9 ("The Court would not be inclined to require the release of such information until weeks prior to Mr. Francis's anticipated testimony.").

Defendant Dolan's motion to compel discovery is therefore premature and should be denied. Doc. 540 at 12. To the extent Defendant Dolan requests information regarding Francis's forfeiture obligations or his medical release, that is answered in Part 1 of this pleading.

---

(4th ed.) ("[A] motion for a deposition that will delay the trial may be rejected as untimely."). Defendant Dolan has had many years to request a Rule 15 deposition; doing so now is not only unsupported by the rules of evidence but would inevitably delay trial.

17-CR-00623-JLS

**25.    The United States Will Defer to the Court on the Proper Use of Leading Questions for a Government Agent Called by Defendant Dolan**

If Defendant Dolan calls a government agent to testify in his case-in-chief, Doc. 540 at 13, the United States will defer to the Court's discretion in allowing leading questions during direct examination and disallowing such questions during cross-examination.  Under Federal Rule of Evidence 611(c)(2), a court may "[o]rdinarily" allow leading questions when a party calls "a hostile witness, an adverse party, or a witness identified with an adverse party."  Likewise, a court may "[o]rdinarily" allow leading questions during cross-examination, but the Advisory Committee did note that a court could disallow leading questions on cross-examination where the witness is friendly. Fed. R. Evid. 611(c) note on 1972 proposed rules.

The United States therefore agrees that, as a general matter, if Defendant Dolan calls a government agent as a witness in his case-in-chief, Defendant Dolan may use leading questions on direct and the United States should refrain from using leading questions on cross.  But there may be instances where leading questions may not be appropriate on direct (such as if the agent is not hostile with respect to the subject matter of questioning) or may be appropriate on cross (such as when they are "necessary to develop the witness's testimony," Fed. R. Evid. 611(c)).  The Court has broad discretion in policing the use of leading questions, *Miller v. Fairchild Indus., Inc.*, 885 F.2d 498, 514 (9th Cir. 1989), and the United States will defer to the Court on this issue.

**26.    The United States Will Follow Rule 801(d)(1)(B)(i) for Prior Consistent Statements**

The United States should be permitted to introduce prior consistent statements in accordance with the Rules of Evidence.  For a given cooperating witness, the United States does not intend, in the first instance, to offer that witness's statements during interviews as evidence.  Instead, the United States will offer the cooperating witness's direct testimony regarding the facts at issue, as well as any statements made as a co-conspirator that comport

with Federal Rule of Evidence 801(d)(2)(E).  If Defendant Dolan attempts to impeach a cooperating witness with a prior inconsistent statement, Doc. 540 at 14, with an express or implied charge of recent fabrication or recent improper influence or motive, the United States may seek to introduce prior consistent statements under Rule 801(d)(1)(B)(i).  Under that rule, the Court may admit a prior consistent statement of the witness if: (1) the witness testifies at trial and is subject to cross-examination; (2) there is an express or implied charge of recent fabrication or improper influence or motive; (3) the United States offers a prior statement consistent with the witness's testimony; and (4) the prior statement is made "prior to the time that the supposed motive to falsify arose." *United States v. Colicott*, 92 F.3d 973, 979 (9th Cir. 1996).  A prior consistent statement so admitted is non-hearsay, substantive evidence. *Tome v. United States*, 513 U.S. 150, 157 (1995).

Though Defendant Dolan raises suspicions about a cooperating witness's motives in general, Doc. 540 at 16, the case law is nuanced about when a cooperating witness has a motive to lie.  For example, in *United States v. Rohrer*, 708 F.2d 429 (9th Cir. 1983), the Ninth Circuit held that a witness statement, given one day before the witness formally entered into a cooperation agreement with the government, was made while the witness had the motive to lie and was not an admissible prior consistent statement. *Id.* at 433.  The court reasoned that the witness "sought to drive a better bargain with the government" at the time he gave the statement. *Id.*  On the other hand, in *United States v. Washington*, 462 F.3d 1124 (9th Cir. 2006), the Ninth Circuit held that where the witnesses made statements months before their plea agreements, those statements were made before the motive to lie and were admissible. *Id.* 1135.  In short, contrary to Defendant Nolan's "confident" belief, Doc. 540 at 16, there are situations where a witness says in an interview "not X" and subsequently says in another interview "X," all without the motive to lie in order to get a better deal.  For example, the witness may recall "X" after reviewing evidence, or if he decides to tell the truth independently.

17-CR-00623-JLS

As a final point, prior consistent statements are admissible under two additional bases. First, under the "opened door" rationale, if there is a prior consistent statement in the same source from which the inconsistent statement was drawn, or other context from that source that explains the inconsistent statement, that information is admissible. *Colicott*, 92 F.3d at 980. "The opposing party may not pick and choose among prior statements to create an appearance of conflict and then object when this appearance is rebutted by means of a fuller version of the same prior statements." *Id.* Second, under Rule 801(d)(1)(B)(ii), the United States may introduce a prior consistent statement to rehabilitate a witness's credibility when the witness is attacked on some other ground, such as bare inconsistency or faulty memory. Fed. R. Evid. 801(d)(1)(B) note on 2014 amendments.

## 27.    Rule 613(b) Governs Impeachment with Prior Inconsistent Statement

The United States opposes Defendant Dolan's motion to circumvent the rules of evidence and impeach witnesses through the case agent. Doc. 540 at 16. His scenario is premised upon allowing a case agent with no personal knowledge to testify about a witness's prior statement, as memorialized in a report that the case agent did not author. At this point,[9] as set forth in its motions in limine, the United States urges the Court apply Federal Rule of Evidence 613(b) to the impeachment of witnesses. Doc. 528 at 5.

## 28.    The Court Should Admit Evidence of Prostitution

The Court should admit evidence that the Defendants' bribery conspiracy involved the use of prostitutes. The United States has alleged in the Indictment that Defendants, including Defendant Dolan, accepted various things of value from Leonard Francis, including the services of prostitutes on numerous occasions. *See* Indictment, ¶¶ A30, 31, A103, A106, A107, A113, A118, A120, A135, A139, A140, A153, A155, A165, A181, A182, A195, A198. These allegations include allegations that the Defendants discussed the prostitutes ahead of time with Francis, specifically requesting photographs of the women

---

[9]    As indicated in its correspondence with counsel, the United States is prepared to discuss further with Defendant Dolan whether a stipulation on this issue can be reached.

17-CR-00623-JLS

they could expect to engage with (*e.g.* A135, A153), and that the parties that Francis threw with the prostitutes were extremely lavish (*e.g.* A118, A139).  There is no way to sanitize what occurred at these parties, nor is the United States required to do so.  Indeed, as the Ninth Circuit recognized in *United States v. Hankey*, 203 F.3d 1160, 1172 (9th Cir. 2000),

> Relevant evidence is inherently prejudicial; but it is only unfair prejudice, substantially outweighing probative value, which permits exclusion of relevant matter under Rule 403. Unless trials are to be conducted as scenarios, or unreal facts tailored and sanitized for the occasion, the application of Rule 403 must be cautious and sparing.  Its major function is limited to excluding matter of scant or cumulative probative force, dragged in by the heels for the sake of its prejudicial effect.

The fact that Francis offered prostitutes and the Defendants then accepted those prostitutes at lavish and expensive parties is fundamental to the allegations at issue, and the evidence is therefore admissible and not more prejudicial than probative under Rule 403.

Defendant Dolan further requests that the Court preclude the United States from eliciting evidence of any Defendant using the services of a prostitute unrelated to Leonard Francis's provisioning of that prostitute, and to preclude the United States from eliciting from a witness that he heard or witnessed a Defendant engage the services of a prostitute. Doc. 540 at 19.  The United States is not sure what evidence Defendant Dolan is referencing in this request.  The United States does not anticipate introducing evidence relating to prostitution that is entirely separate and apart from Leonard Francis, but without knowing exactly what Defendant Dolan is referencing it is difficult for the United States to respond to this part of the motion.

17-CR-00623-JLS

**29.  Cooperators Should Be Permitted to Testify Regarding Their Understanding of Their Plea Agreement**

The Court should deny Defendant Dolan's motion to order the United States not to impermissibly vouch for its witnesses.  Such an order is unnecessary.  Defendant fears a situation that is entirely of his own making -- that a witness will claim he "doesn't understand any of the terms of the plea agreement [but] all he knows is that he is obligated testify truthfully."[10]  Doc. 540 at 20.

If Defendant Dolan cross-examines cooperating witnesses about the plea agreements, the United States is entitled to address the witnesses' understanding of the plea agreements and their obligations thereunder.  References to truthfulness requirements in plea agreements do not constitute vouching when made in response to attacks on the witness's credibility because of the plea agreement.  *United States v. Shaw*, 829 F.2d 714, 716 (9th Cir.1987); *United States v. Wallace*, 848 F.2d 1464, 1474 (9th Cir. 1988).  *See also United States v. Tham*, 665 F.2d 855, 862 (9th Cir. 1981) (permissible to reference truthfulness requirement in plea agreement in response to defense argument that plea bargain required witness "not to testify truthfully, but to testify favorably to the government"); *United States v. Brooklier*, 685 F.2d 1208, 1218 (9th Cir. 1982) (plea agreement properly admitted to rebut defense references to witness as "a perjurer, paid informant, and murderer who escaped the death penalty by cooperating with the FBI"); *United States v. Rohrer*, 708 F.2d 429, 433 (9th Cir. 1983) (agreement properly admitted in response to "extensive impeachment" of witness's motives and "discussion of part of the agreement").

The Ninth Circuit's decision in *United States v. Brooks*, 508 F.3d 1205 (9th Cir. 2007) does not compel a different result.  As indicated, the United States does not intend to elicit

---

[10]  It appears that Defendant Dolan is laying the groundwork to induce just this sort of testimony, with his intent to call an "expert" on plea bargaining, *see* Doc. 528 at 17, and his request for the Pre-Sentence Reports so he can "present to the jury that Mr. Francis and Mr. Sanchez received front-end benefits in their plea agreements, which may be evidenced in part by the Guidelines calculations done by the probation officer(s)."  Doc. 540 at 13.

on direct examination the witnesses' obligation in their plea agreement to testify truthfully. But even in *Brooks*, where such testimony emerged in the direct examination, the Ninth Circuit ultimately held that the mild vouching did not constitute plain error: "because the credibility of these witnesses would almost certainly have been challenged during cross-examination, there was justification to bolster credibility [on direct]."  508 F.3d at 1211–12.  The cross-examination in *Brooks*, in particular -- as it is clear Defendant Dolan intends to do here -- attacked the main cooperator's credibility "by suggesting his testimony had been bought with sentencing concessions."  Given the curative instructions and the strength of the government's case, there was no plain error in the direct examinations, the court found.  *Id.*[11]

Defendant Dolan's motion for an order prohibiting discussion of the truthfulness requirement in the plea agreement should be denied.

---

[11]   Defendant Dolan, while block quoting lengthy portions of *Brooks*, Doc. 540 at 21, inserted ellipses in the third and fourth paragraphs of his quotation, omitting key portions of the rationale for the court's concern in that case.  For example, Dolan omitted the following from the description of the redirect exam in the third paragraph: "Soriano also agreed with the prosecutor's suggestion that the prosecutors and the judge in other trials believed he testified truthfully, and that if he had 'lied, given false testimony at those trials,' he would not have been given a reduction in his sentence."  *Brooks*, 508 F.3d at 1210.  That omission, of course, ties directly to the court's vouching concern, as the testimony left "the implication that *the court*, as well as law enforcement, can, has, and will monitor the [witness's] truthfulness."  Doc. 540 at 21 (emphasis added).  Another ellipses in the next block quoted paragraph omitted this line, after the citation to *Ortiz*: "The testimony about previous courts['] monitoring Soriano's statements and making positive assessments improperly bolstered Soriano's credibility," in the line which continued "it is improper to communicate that a credibility determination has been made by the AUSA, law enforcement agents, or the court."  *Brooks*, 508 F.3d at 1210.  Thus, Defendant Dolan's citation to *Brooks* omitted a key reason why the court was troubled by the redirect -- namely that the testimony left the mistaken impression that other courts had vouched for Soriano's credibility, too.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## CONCLUSION

For the foregoing reasons, the United States respectfully requests that the Court deny the Defendants' motions in limine.

DATED: August 19, 2021                         Respectfully submitted,

RANDY S. GROSSMAN
Acting United States Attorney

/s/ David Chu
Assistant United States Attorney

/s/ Valerie H. Chu
Assistant United States Attorney

/s/ Mark W. Pletcher
Assistant United States Attorney

/s/ Michelle L. Wasserman
Assistant United States Attorney

17-CR-00623-JLS