RANDY S. GROSSMAN
United States Attorney
DAVID CHU (CA Bar No. 242046)
VALERIE H. CHU (CA Bar No. 241709)
MARK W. PLETCHER (CO Bar No. 034615)
MICHELLE L. WASSERMAN (CA Bar No. 254686)
Assistant U.S. Attorneys
880 Front Street, Room 6293
San Diego, California 92101
Telephone: (619) 546-9714

Attorneys for the United States

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>DAVID NEWLAND, ET AL.,<br><br>Defendants. | No. 17-CR-0623-JLS<br><br>**UNITED STATES'S RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION REGARDING LEONARD FRANCIS'S PODCAST INTERVIEWS**<br><br>Date:  February 17, 2022<br>Time:  2:00 p.m. |

    The United States of America, by and through its counsel, Randy S. Grossman, United States Attorney, and David Chu, Assistant U.S. Attorney, hereby urges this Court to deny Defendants' motion to remedy Leonard Francis's purported corruption of the grand jury process, obstruction of justice, and for related discovery. Doc. 662. Fueled by more than 20 hours of recordings of Francis made in connection with the "Fat Leonard" podcast, the Defendants hypothesize about phantom misconduct of the prosecution team. This unabashed abject speculation fails because there is not a single iota of evidence of: (i) any bad faith on the part of the prosecution team; (ii) any perjury before the grand jury; (iii) any false information before the grand jury; (iv) the prosecution team conferring any benefit regarding Francis's children traveling here and staying with him; or (v) the prosecution team agreeing with Francis that he would receive a time served sentence. Thus, any remedy

predicated on the purported malfeasance of the prosecution team fails. The only recourse available to the Defendants is that supplied by the Federal Rules of Evidence: they may use Francis's statements for cross-examination and impeachment. No more, no less.

## I. THERE IS NO EVIDENCE OF ANY GRAND JURY IMPROPRIETY

The Court should decline the Defendants' suggestion to impermissibly invade the secrecy of the grand jury based solely on their speculation. Protection of grand jury secrecy is a fundamental legal principle that predates the founding of this country. *Pittsburg Plate Glass Co. v. United States*, 360 U.S. 395, 399 (1959). The district court may invade this sacred province only when a party shows a particularized need for grand jury transcripts that outweigh the policy of secrecy. *Id.* at 400. "[U]nsubstantiated, speculative assertions of improprieties" before the grand jury do not meet the standard of particularized need. *United States v. Ferreboeuf*, 632 F.2d 832, 835 (9th Cir. 1980).

The Defendants cannot point to a single impropriety before the grand jury: no perjury, no false evidence, no prejudice, no prosecutorial misconduct, nothing. Notwithstanding over 20 hours of recordings, Defendants cannot muster even a single specific instance where the "truth" told by Francis conflicted with any allegation in the Indictment. Instead, they rely on general statements from Francis made during the podcast interviews. For example, in a particularly disjointed back and forth in the seventh recording for the podcast, Francis stated: "I can't say my story because if I tell you my story, then the government hasn't got a case against all these guys." Doc. 662 at 4.[1] Then, towards the end of the series, when the podcast creator Tom Wright revealed that he was going to air the podcast before trial, in apparent contradiction to what Francis understood, Francis stated: "The key's going to be thrown away from me because I talked to you and told the truth." Doc. 662 at 4. The Defendants infer that: (i) Francis lied to the prosecution team; (ii) "the truth came out" on

---

[1] For clarity, the United States is using the page number stamped by ECF, not the page number created by the author of the document.

the podcast recordings; and (iii) Francis's lies to the prosecution team were presented to the grand jury. Doc. 662 4–5, 9. This speculative logic crumbles when faced with reality.

By contrast, the 78-page Indictment, describing in vivid color the allegations against the Defendants, is a good indicator of what information was brought before the grand jury. Indeed, it bears repeating, notwithstanding over 20 hours of unvarnished recordings, Defendants cannot muster even a single specific instance where the purported "truth" relayed by Francis conflicted with any allegation in the Indictment. In the interviews, did Francis disclaim giving lavish dinners, luxury hotel stays, prostitutes, and other gifts to the Defendants? Did he assert that he did not, in fact, receive classified ship schedules, competitor information, and other official acts in return? No, he did not.[2] Just the opposite. As one of many examples, Francis recounted how Defendants Newland and Lausman helped Francis in stymieing a competitor. Doc. 662-1 at 23 ("Well they got involved because it was me. They were benefitting from me."). As another example, Francis recounted that some of the Defendants accompanied Francis to a karaoke bar in Manila, brought prostitutes back to the hotel, and engaged in a "mass orgy." Doc. 662-1 at 30–31. In fact, in other contexts, Defendants have conceded that Francis's statements in the podcast are inculpatory. *See* Doc. 640 at 9 ("[T]he content of the podcasts is glaringly biased toward the government's trial case."). Under these circumstances, Francis's general, disjointed

---

[2] As explained by Wright and Francis in the eighteenth and final recording, the raison d'etre of the podcast was not to exonerate the Defendants but to convey Wright's and Francis's belief that higher ranking Navy officials had escaped justice. Doc. 662-4 at 4 ("The fact that the involvement of the admirals, the involvement of Martin Montgomery, and others we were just talking about. That needs to come out."), 15 ("Cover up of the thousands that got away. That's what I'm trying to explain to you. . . . But that's what this is about. This is what this podcast is about."). Yet, assertions that others committed wrongdoing and were not prosecuted are inadmissible because they have no relevance as to whether the Defendants committed the crimes alleged in the Indictment. Doc. 601 at 16 (motion by United States to exclude charging decisions and outcomes of other cases). Against this backdrop, it takes little imagination to understand why the Defendants are requesting to play this inadmissible interview recording in its entirety to the jury.

statements regarding "my story" and "the truth," and the Defendants' speculation on those statements, fails to show the particularized need required to invade grand jury secrecy.[3]

## II. THERE IS NO EVIDENCE OF PROSECUTORIAL MISCONDUCT

The Court should, likewise, reject the Defendants' call for an evidentiary hearing regarding prosecutorial misconduct, as there is no evidence of such misconduct. The only evidence that the Defendants proffer is a quote from Francis that the government is "unforgiving." Doc. 662 at 10. The context of this statement is that Francis was explaining to Wright his perception that "the DOJ" will be "piss[ed] off" when it discovered Francis had agreed to speak with Wright and create the podcast. Doc. 662-4 at 18.

It is, of course, entirely reasonable that in Francis's view, the prosecution team would be displeased because he secretly gave a journalist over 20 hours of recorded statements. His fear that his actions would reflect poorly on him and may affect his ultimate sentence (a concern he expressed at other points in the recordings) is not, however, evidence of misconduct, bad faith, or prejudice by the prosecution team.[4]

## III. THE COURT SHOULD FOLLOW THE RULES OF EVIDENCE REGARDING FRANCIS'S TESTIMONY AND HIS STATEMENTS

The Court should further deny the Defendants' bizarre request to preclude Francis as a witness for the prosecution, allow Francis solely to testify for the Defendants as to the bad faith of the prosecution, allow the Defendants to play a specific interview recording of Francis in its entirety, and give a special jury instruction on the "bad faith" of the prosecution team. Doc. 662 at 10–11. The purported basis for this request is that "the

---

[3] The United States will turn over grand jury transcripts as required. As that production will show, Leonard Francis did not testify before the grand jury.

[4] The Defendants' scurrilous allegations with no proof are not well taken and harken back to previous such allegations in this case against the Court and the prosecution team by taking single words and phrases and extrapolating to some sinister course of misconduct. *See, e.g.*, Mot. to Compel CIPA Discovery, Doc. 437 at 29.

prosecution is causing . . . corruption" of "the truth-seeking process." Doc. 662 at 10. Yet, once again, there is no evidence supporting this serious allegation.

Lest the forest be lost through the trees, four of the defendants indicted in this case have now pleaded guilty for conspiring to and/or receiving bribes from Leonard Francis. In addition, joint offenders, including Ed Aruffo, Jesus Cantu, Jose Sanchez, Alex Gillett, Dan Dusek, Neil Peterson, Alex Wisidagama, Linda Raja, Pornpun Settaphakorn, among others, have also pleaded guilty for their roles in this years-long conspiracy and bribery conduct. To be additionally sure, the allegations, as set forth in the Indictment, are backed by photographs, emails, and tangible evidence corroborating these events.

Against this tidal wave of evidence, both testimonial and documentary, if the United States calls Francis as a witness, in accordance with long-standing Supreme Court jurisprudence, the rules of professional conduct of the California Bar, and the professional integrity of the prosecution team, the United States will not knowingly offer false information and will correct any information that it knows to be false. *Napue v. Illinois*, 360 U.S. 264, 269–70 (1959); Cal. Rules of Prof'l Conduct 3.3(a)(3). If the Defendants believe that Francis testified untruthfully on direct examination, they are welcome to explore that on cross examination. He can be impeached by evidence of bias. If the Defendants believe that Francis's testimony is inconsistent with a prior statement, they can explore that as well under Federal Rule of Evidence 613(b).[5] That is how trial works. What

---

[5] The United States previously moved for the parties to follow Rule 613(b) regarding impeachment with extrinsic evidence. Doc. 528 at 5. The Defendants replied that they were "familiar with the evidentiary rules in this context." Doc. 558 at 10. Defendants' proposal to play the entirety of an interview recording of Francis says otherwise. The recording is inadmissible hearsay not subject to an exception. Under Rule 613(b), extrinsic evidence of a prior inconsistent statement is admissible only if a number of prerequisites have been met, including that the witness must be afforded the opportunity to explain or deny the statement, and then only for impeachment purposes. Under no circumstances can an entire recording meet these requirements. If the Defendants wish to offer snippets or clips of the recording as substantive evidence, they need to follow the rules of evidence, including the hearsay rules, with which they claim to be so "familiar."

the Defendants cannot do is make up rules and remedies based on a figment of their imagination which are at odds with the actual evidence in the case.

### IV. THE DEFENDANTS ARE ENTITLED TO DISCOVERY ONLY ON BENEFITS ACTUALLY CONFERRED BY THE PROSECUTION TEAM

The Court should deny the motion to compel discovery regarding: (i) Francis's children traveling to the United States and living with him; (ii) Francis's belief that he will receive a time served sentence; and (iii) Francis's underlying medical conditions. Consistent with the Court's order in this regard, as part of its *Giglio* obligations, the United States will produce material impeachment information, such as any benefit it provides to a witness. *United States v. Sedaghaty*, 728 F.3d 885, 901 (9th Cir. 2013) (reversing conviction based on prosecution's failure to disclose payments made to witness). The United States understands this as an ongoing obligation and will further supplement its *Giglio* disclosure if additional discoverable information becomes known.

To preview that disclosure in part, however, the prosecution team had nothing to do with Francis's children traveling to the United States, and a defendant's speculation that the United States conferred a benefit, when the United States has represented that it has not provided oner, is not impeachment material. *United States v. Chang Da Liu*, 538 F.3d 1078, 1087 (9th Cir. 2008) (ruling that defendant's speculation that prosecution granted a witness immunity, when prosecution denied such action, was not impeachment material). Likewise, other than as set forth in the hearing transcripts and orders on this issue, which are subject to court-ordered disclosure, the prosecution team had nothing to do with Francis's children supposedly living with Francis during his medical furlough. Francis's furlough conditions are overseen by the Court and Pretrial Services, which serves as an arm of the Court. Based on some indefinite comments by Francis, which are subject to many interpretations, the Defendants make the tenuous claim that Francis may have misperceived that the prosecution team furnished these benefits. Doc. 662 at 13. Even if the correct interpretation, Francis's misperception in this regard does not create an imaginary discovery obligation. Ultimately,

the United States cannot produce that which does not exist. The Defendants, of course, remain free to cross-examine Francis on if or why he has this perception and how, if at all, this misperception could influence his testimony.

Likewise, the only agreement regarding sentencing between the prosecution team and Francis is that contained in his plea agreement. Defendants baselessly claim otherwise, creating from whole cloth the notion that Francis told Wright that he had been promised a time served sentence: "So the low end of the sentencing guideline is 188 months. So 188 months is 12 years and something like that. And then with good time and everything and blah, blah, blah, blah, blah, I'm done." Doc. 662-2 at 79. Yet, it is clear from these statements that Francis's assertion of a time-served sentence is aspirational, based only on his understanding of the mechanics of the plea agreement, the low-end guideline range of that agreement, and the implementation of sentencing credits by the Bureau of Prisons. Like the rest of this motion, the Defendants' suggestion that there is some secret "wink-and-nod" agreement with the prosecution team, Doc. 662 at 14, when the basis for Francis's claim is stated plainly in the recordings, is disingenuous and a waste of time.

Finally, the Defendants' request for records relating to Francis's medical condition has been previously considered and adjudicated. Doc. 662 at 12. The Defendants claim that such discovery is necessary to see if Francis (and perhaps his doctors) have been lying to the Court so that Francis could continue his medical furlough. Of course, the Court has held regular hearings on this topic and is well-equipped to test the truthfulness of Francis, his counsel, and his doctors, and needs no assistance from the Defendants in this regard.

# CONCLUSION

For the foregoing reasons, the United States respectfully requests that the Court deny the motion in its entirety.

DATED: February 4, 2022            Respectfully submitted,

RANDY S. GROSSMAN
United States Attorney

/s/ David Chu
Assistant United States Attorney